FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE 05 AUG 12 PM 1: 58
WESTERN DIVISION

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

LESLIE D. CHAMBERS, IRIS )
HANCOCK CHAMBERS and DeLYNN )
CHAMBERS, INC., )
 )
          Plaintiffs, )
 )
v. )          No. 03-2754 Ml/P
 )
AL FREEMAN, Individually and )
in his capacity as a Deputy )
Sheriff of Fayette County, )
Tennessee, DAN FEATHERS, )
Individually and in his )
capacity as an Officer of the )
City of Somerville, Tennessee )
Police Department, TOM TAYLOR, )
Individually and in his )
capacity as an officer of )
the Memphis Police Department, )
 )
          Defendants. )

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT AL FREEMAN**
**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT DAN FEATHERS**
**and**
**ORDER OF DISMISSAL**

---

Before the Court is the Motion for Summary Judgment on Behalf of Defendant Al Freeman, filed June 2, 2005, to which Plaintiffs responded in opposition on July 11, 2005. Also before the Court is the Motion for Summary Judgment of Defendant Dan Feathers, filed June 2, 2005, to which Plaintiffs responded in opposition on July 19, 2005. Defendant filed a reply to

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 8-15-05



Defendant Officer Feathers' motion on July 25, 2005.[1]  For the
following reasons, the motions are GRANTED.

## I.   BACKGROUND

The instant lawsuit arises out of Defendants' search and
seizure of property at the home of Plaintiffs Leslie D. Chambers
and Iris Hancock Chambers on October 9, 2002.  Plaintiffs allege
that Defendants confiscated business and personal property that
was not listed in the search warrant, that they damaged and
destroyed Plaintiffs' property while conducting the search, that
they did not maintain the safety and protection of Plaintiffs'
property while it was under their care, custody and control, and
that they breached their duty to Plaintiffs to observe basic
storage techniques.  (Pls.' Compl.)[2]  The facts relevant to
Plaintiffs' claims are largely undisputed.[3]

---

[1] Defendant is hereby granted leave to file his reply.

[2] Plaintiffs' Complaint does not include page or paragraph
numbers.

[3] In their respective responses to Defendants' motions for
summary judgment, Plaintiffs do not specifically respond to
Defendants' serially numbered statements of material facts upon
which Defendants relied in support of their respective motions
for summary judgment, as required by Local Rule 7.2(d)(3)("the
opponent of a motion for summary judgment who disputes any of the
material facts upon which the proponent has relied pursuant to
subsection (2) above shall respond to the proponent's numbered
designations, using the corresponding serial numbering, both in
the response and by affixing to the response copies of the
precise portions of the record relied upon to evidence the
opponent's contention that the proponent's designated material
facts are at issue.").  In response to Officer Freeman's
                                              (continued...)

2

Plaintiffs Leslie Chambers and Iris Chambers are husband and wife who, at the time relevant to the instant case, resided at 815 Linwood Dr. in a mobile home located on a rural road in an unincorporated area of Fayette County, Tennessee.[4] (Statement of Material Facts Upon Which Def. Feathers Relies in Supp. of His Mot. for Summ. J. (Docket No. 48) ¶ 1.) Defendant Al Freeman is a deputy sheriff employed by the Fayette County Sheriff's Department. (Id. ¶ 2.) Defendant William Daniel Feathers was, at the time relevant to the instant case, a police officer employed by the Town of Somerville who had been assigned to work

---

(...continued)
statement of undisputed facts, Plaintiffs refer the Court to the March 26, 2003, Report and Recommendation of the United States Magistrate Judge in United States v. Chambers, a criminal case brought against Leslie D. Chambers as a result of the search of the Chambers' residence on October 9, 2002. (See March 26, 2003, Report and Recommendation on Defendant's Motion to Suppress (Docket No. 36) at 6 , United States v. Chambers, No. 02-20423, W.D. Tenn., indictment filed on November 12, 2002.) The Court hereby takes judicial notice of the magistrate judge's March 26, 2003, Report and Recommendation in United States v. Chambers. The Court adopted the magistrate judge's Report and Recommendation and granted Leslie Chambers' motion to suppress the evidence seized from his property on September 26, 2003. The United States Court of Appeals for the Sixth Circuit affirmed the District Court and the Indictment as to Leslie Chambers was dismissed on April 11, 2005. The facts found in the March 26, 2003, Report and Recommendation do not contradict those stated by either Defendant. Accordingly, the Court finds that Plaintiffs do not dispute the facts relied upon by either officer in their respective motions.

[4] Although each defendant has presented his own statement of material facts, the respective facts relied upon by Defendants are not in conflict and therefore the Court has set them forth together.

full-time as a Narcotics Officer for the 25th Judicial District Drug Task Force. (Id. ¶ 3.)[5]

On October 9, 2002, the Fayette County Sheriff's Department received a tip that Plaintiffs and other individuals were manufacturing methamphetamine at Plaintiffs' residence. (Mem. of Law in Supp. of Mot. for Summ. J. on Behalf of Def. Al Freeman at 1, ¶ 1.) Plaintiffs contend that Officer Freeman, at that time, was in possession of information gained from a reliable informant, his own previous surveillance of their property, and an anonymous tip made within an hour from the time he entered Plaintiffs' premises, that indicated drug activity had been taking place at Plaintiffs' residence. (Pls.' Mem. in Opp. to Def. Al Freeman's Mot. for Summ J.)[6] Nonetheless, it is undisputed that he did not obtain a search warrant at that time. (Id.) Rather, Officer Freeman went to Plaintiffs' residence to investigate, along with two other officers. (Mem. of Law in Supp. of Mot. for Summ. J. on Behalf of Def. Al Freeman at 2, ¶ 2.) After Officer Freeman knocked on the door of the residence, a

---

[5] Plaintiffs' Complaint also names Tom Taylor, purportedly an officer of the Memphis Police Department, as a defendant. Although a summons was issued as to Tom Taylor, no return of service was ever filed and Tom Taylor did not answer Plaintiffs' Complaint. Accordingly, Plaintiffs' purported claims against Tom Taylor are DISMISSED for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

[6] The pages of Plaintiff's opposition to Defendant Freeman's motion for summary judgment are not numbered.

4

female approached the door. (Id.)  When Officer Freeman
identified himself as a police officer, the woman turned around
and excitedly ran back into the house, loudly exclaiming that the
police were at the door.  (Id. at 2, ¶ 3; Rep. and Rec. on Def.'s
Mot. to Suppress, United States v. Chambers, No. 02-20423, W.D.
Tenn. filed on November 12, 2002, (Docket No. 36) at 6.)  Officer
Freeman then heard a commotion inside the trailer home loud
enough to indicate that several people were running through the
trailer home. (Mem. of Law in Supp. of Mot. for Summ. J. on
Behalf of Def. Al Freeman at 3, ¶ 3; November 12, 2002, Rep. and
Rec. at 6.)  Only then did the deputies enter the home. (Mem. of
Law in Supp. of Mot. for Summ. J. on Behalf of Def. Al Freeman at
3; November 12, 2002, Rep. and Rec. at 6.)

Officer Freeman contends that, from his knowledge and
training as a police officer, he was conscious that the persons
inside the residence may have been attempting to destroy evidence
or products used in the manufacturing of methamphetamines and,
out of fear for the safety of his fellow officers and himself,
and the potential destruction of evidence, he and the other
officers entered the trailer home. (Mem. of Law in Supp. of Mot.
for Summ. J. on Behalf of Def. Al Freeman at 2, ¶ 4-5.)  Once
inside the trailer home, Officer Freeman spoke with Plaintiff
Leslie Chambers, informed him of his Miranda rights and obtained
his verbal consent to search the residence.  (Id. at 2, ¶ 6.)

While inside the residence, Officer Freeman noticed, in plain view, paraphenalia associated with the manufacture and use of methamphetamines, including torn pieces of aluminum foil with residue in them, blister packs of cold tablets, a gallon of solvent paint thinner and lithium batteries.  (Id. at 2-3, ¶ 7.)

At some point after obtaining Plaintiffs' verbal consent to search the home, Officer Freeman telephoned Officer Feathers, described the situation to him, and requested that he come to the residence to assist. (Stmt. Of Mat. Facts Upon Which Def. Feathers Relies in Supp. of His Mot. for Summ. J. ¶¶ 4-8.) Officer Feathers subsequently drove to Plaintiffs' residence and, upon his arrival, obtained the signatures of Leslie Chambers and Iris Chambers on separate forms indicating their consent to a search of their residence. (Id. ¶¶ 9, 12-15.)[7]

After conducting a limited search of the premises but before conducting a full search, Officer Feathers prepared an affidavit to obtain a search warrant and then obtained such a warrant from then Fayette County Circuit Court Judge Jon Kerry Blackwood. (Id. ¶¶ 25-27.)  The warrant authorized the officers to search the premises for evidence of suspected drug manufacturing

---

[7] Plaintiffs both wrote the term "without prejudice" below their signatures on the form, apparently due to a belief that such a notation would negate their consent.  Although the parties disputed the significance of that notation during the preceding criminal case, the notation was found to have no legal significance, and the parties do not dispute the fact that the notation had no legal effect on their consent to the search in this case.

6

activity.  (Mem. of Law in Supp. of Mot. for Summ. J. on Behalf
of Def. Al Freeman at 3, ¶ 10.)  Based upon evidence discovered
at Plaintiffs' residence, both Plaintiffs were arrested and
various items were seized from the property. (Id. at 3, ¶ 11.)

    Officer Feathers contends that his only involvement in the
search was to photograph certain evidence and secure samples of
alleged methamphetamine and items used to make methamphetamine.
(Stmt. of Mat. Facts Upon Which Def. Feathers Relies in Supp. of
His Mot. for Summ. J. ¶ 29.)  He also contends that he did not
destroy or damage any of Plaintiffs' property, touch or take any
tools or computers belonging to Plaintiffs, nor was he involved
in transporting any vehicles from the premises. (Id. ¶¶ 30-33.)
Officer Freeman contends that he did not take any action to
intentionally or unintentionally destroy, damage or alter any of
Plaintiffs' property that was being searched, and that he was not
responsible for taking inventory of or storing any of Plaintiffs'
property.  (Mem. of Law in Supp. of Mot. for Summ. J. on Behalf
of Def. Al Freeman at 4-5, ¶¶ 13-17.)

    After they were arrested, Plaintiffs were incarcerated for
approximately 14 days.  (Mem. of Law in Supp. of Mot. for Summ.
J. on Behalf of Def. Al Freeman at 4, ¶ 16.)  Plaintiffs are not
aware of whether anyone was at their house while they were
incarcerated.  (Dep. of Leslie Chambers at 62:23-63:1, 64:20-22,
attached as Ex. C to Mem. of Law in Supp. of Mot. for Summ. J. on

7

Behalf of Def. Al Freeman.)   According to Mr. Chambers's deposition testimony, Mr. Chambers has no personal knowledge of whether Officers Freeman or Feathers had taken any particular actions with respect to his property. (Id. at 52:17-54:3.)[8]

---

[8] In particular, the deposition testimony of Mr. Chambers proceeded as follows:

> Q: Okay. I'm asking you what knowledge do you have as to other people or what they have said to you?
> A: I believe we were in jail for, I think, 13 or 14 days, we come back and everything was destroyed.  I mean, I can't say I saw this one do that or I saw that one do that.
> Q: So - I mean, you - you're not able to tell me anything that Al Freeman did to any of your property, that he actually possessed or touched or anything?
> A: I was locked up in jail.  The only thing I can say is he come in with a gun and robbed us.
> Q: Well, did he - do you have any information as it relates to what property Al Freeman touched, confiscated, or handled in any shape, form, or fashion?
> A: I didn't see him, but I wasn't there.
> Q: Okay.  Do you have any knowledge - do you have any personal knowledge as to any property that Dan Feathers touched, handled or changed in any shape, form, or fashion?
> A: I don't know if I'm getting the question exactly right, but -
> Q: Well, I've told you to stop me and tell me about that now, hadn't I?
> A: All right.
> Q: Okay.  Go ahead.
> A: He's the one that come in with a gun and arrested us and took us to jail, and as far as the damages and stuff that were done there, I was in jail, I can't say that he did this or he did that.  I just know it was done when we got out.

(Dep. of Leslie Chambers at 52:17-54:3.)

Subsequent to the search of the property, Leslie Chambers was indicted regarding the alleged possession of narcotics and firearms. See United States v. Chambers, No. 02-20423, W.D. Tenn., filed on November 12, 2002. On September 26, 2003, the district court granted Mr. Chambers's motion to suppress all evidence seized from his property pursuant to the relevant search. (See Order Granting Def.'s Mot. to Suppress (Docket No. 63), United States v. Chambers, No. 02-20423, W.D. Tenn., filed on November 12, 2002.)

Plaintiffs filed their Complaint on October 9, 2003, contending that much of their personal property was seized in the search, including an automobile, various tools, machinery and electronics. (Pls.' Compl.) Plaintiffs also contend that many of their possessions were damaged or lost either during the course of the search or when these possessions were subsequently stored by the Defendants. (Id.) Attached to Plaintiffs' Complaint are photographs of their property, taken several weeks after the search, which illustrate the alleged damage to their property.

On December 1, 2003, a confiscation hearing was held before the Tennnessee Department of Safety in Memphis, Tennessee, at the conclusion of which Plaintiff executed a Proposed Civil Settlement Agreement and Release of Liability. (See Mot. for Summ. J. on Behalf of Def. Al Freeman, Ex. G.) The agreement was

9

signed by Mr. Chambers and a Department of Safety State Attorney.
(Id.)  The agreement provides that the Claimant, Mr. Chambers,
"will compromise his/her claim to the following property" and
states that the "Property delineated on Transcript" is to be
returned to the Claimant.  A second page is attached to the
agreement containing a list describing nine items of property – a
Compac Presario laptop computer, one Advanced Tech camera
switchbox, one Mustec scanner, one Emerson VCR, various
surveillance cameras and monitors, a 1976 Corvette, a 1985 Honda
three-wheeler, and four hundred dollars in cash. (Id.)  The
transcript of the Department of Safety hearing indicates that the
page attached to the agreement describes all of the items that
were returned to Leslie Chambers on the date of the hearing.
(Mot. for Summ. J. on Behalf of Al Freeman, Ex. F.)  In addition,
the agreement includes the following waiver clause: "**CLAIMANT** by
his/her signature below does waive any legal claim or cause of
action which he/she might otherwise have as a result of any acts
underlying this forfeiture proceeding."  (Id.)

On February 2, 2005, the United States Court of Appeals for
the Sixth Circuit affirmed the judgment of the district court
suppressing all evidence obtained from the search of Plaintiff's
property and dismissing the indictment against Plaintiff because,
the Court found, the seizure had been made pursuant to an illegal

10

entry of Mr. Chambers's home. See United States v. Chambers, 395
F.3d 563, 569-70 (6th Cir. 2005).

## II.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary
judgment is proper "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as the
movant has met its initial burden of "demonstrat[ing] the absence
of a genuine issue of material fact," Celotex, 477 U.S. at 323,
and the nonmoving party is unable to make such a showing, summary
judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353
(6th Cir. 1989).  In considering a motion for summary judgment,
"the evidence as well as all inferences drawn therefrom must be
read in a light most favorable to the party opposing the motion."
Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.
1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary
judgment, the nonmoving party "must set forth specific facts
showing that there is a genuine issue for trial."  Fed. R. Civ.
P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159

11

F.3d 246, 250 (6th Cir. 1998).  A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

### III. ANALYSIS

Both Defendants move for summary judgment regarding all of Plaintiffs' claims against them.  In their Complaint, Plaintiffs allege that Defendants "violated accepted law enforcement policies [regarding] storage of confiscated property ... [and the execution of] ... a search of a home pursuant to a search warrant," and that this conduct violated their rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, as well as 42 U.S.C. §§ 1983, 1985, 1986, and 1988. (Pls.' Compl.)  Neither in their Complaint nor their responses to Defendants' motions for summary judgment, however, do Plaintiffs articulate any theory upon which Defendants may be liable to Plaintiffs under §§ 1985 or 1986.  Additionally, § 1988 merely allows for an award of attorney's fees upon a finding of a violation of certain statutory rights.  Accordingly, the Court DISMISSES Plaintiffs' claims pursuant to §§ 1985 and 1986 and

12

construes Plaintiffs' Complaint as asserting claims pursuant to
42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but rather
serves as a "method for vindicating federal rights elsewhere
conferred." Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979).
To establish a prima facie case under § 1983, a plaintiff must
prove two elements: (1) that the government action occurred
"under color of law" and (2) that the action is a deprivation of
a constitutional right or federal statutory right. Parratt v.
Taylor, 451 U.S. 527, 535 (1981); Block v. Ribar, 156 F.3d 673,
677 (6th Cir. 1998).  "The first step in any such claim is to
identify the specific constitutional right allegedly infringed."
Albright v. Oliver, 510 U.S. 266, 271 (1994).  Plaintiffs claim
that Defendants violated their rights pursuant to the Fourth,
Eighth, and Fourteenth Amendments.

Plaintiffs have sued Defendants both in their individual and
official capacities.  The Court will first address Plaintiffs' §
1983 official capacity claims before addressing their § 1983
individual capacity claims.

**A. Official Capacity Claims**

In an official capacity action, the plaintiff seeks damages
from the entity for which the officer is an agent, rather than an
individual officer. Pusey v. City of Youngstown, 11 F.3d 652, 657
(6th Cir. 1993).  "[A]n official-capacity suit is, in all

13

respects other than name, to be treated as a suit against the
entity. Id. (quoting Kentucky v. Graham, 473 U.S. 159, 166
(1985)).  Accordingly, Plaintiffs' claims for damages against
Defendants in their official capacity must be construed as claims
against the Town of Somerville, Tennessee and Fayette County,
Tennessee.

A municipality may be held liable under § 1983 only if the
municipality itself caused a constitutional deprivation.  Monell
v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978).
Before a local governmental unit can be held liable for injuries
pursuant to § 1983, "a plaintiff must show that his injuries were
the result of some 'policy or custom' attributable to the
governmental entity."  Leach v. Shelby County Sheriff, 891 F.2d
1241, 1245 (6th Cir. 1989) (quoting Monell, 436 U.S. at 690).  A
municipality is not liable under § 1983 for an injury inflicted
solely by its employees or agents, but rather only when the
"execution of the government's policy or custom ... inflicts the
injury."  City of Canton v. Harris, 489 U.S. 378, 385 (1989).
Further, the governmental entity is liable under § 1983 only when
the entity itself is a "moving force" behind the deprivation of
constitutional rights.  Kentucky v. Graham, 473 U.S. 159, 166
(1985).

Plaintiffs do not allege in their Complaint, nor do they
point to any evidence in the record, to show that any alleged

14

constitutional deprivation was the result of a municipal policy
or custom of the Town of Somerville or Fayette County, Tennessee.
Accordingly, Plaintiffs' claims against Officers Feathers and
Freeman in their official capacities are DISMISSED.

### B. Individual Capacity Claims

Plaintiffs have also asserted § 1983 claims against both
Defendant officers in their individual capacities.  Both Officer
Freeman and Officer Feathers contend that they are either
entitled to qualified immunity from Plaintiffs' § 1983 claims or
that Plaintiffs fail to point to any evidence that the officers
caused any constitutional deprivation with respect to any loss
and/or damage to their property during or after the search.  The
Court will address these contentions in turn.

### 1. Qualified Immunity

The doctrine of qualified immunity protects government
officials who perform discretionary functions from civil
liability "insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known." Beard v. Whitmore Lake
School Dist., 402 F.3d 598, 602-03 (6th Cir. 2005)(citing Harlow
v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In Beard, the United
States Court of Appeals for the Sixth Circuit described the three
part test for determining whether a grant of qualified immunity
is proper:

15

> *First,* we determine whether, based upon the applicable
> law, the facts viewed in the light most favorable to
> the plaintiffs show that a constitutional violation has
> occurred.   *Second,* we consider whether the violation
> involved a clearly established constitutional right of
> which a reasonable person would have known.   *Third,* we
> determine whether the plaintiff has offered sufficient
> evidence to indicate that what the official allegedly
> did was objectively unreasonable in light of the
> clearly established constitutional rights.

Id. at 603 (citing Champion v. Outlook Nashville, Inc., 380 F.3d

893, 900-01 (6th Cir. 2004)).  "If the answer to all three

questions is yes, then qualified immunity is not proper." Id.

(citing Champion, 380 F.3d at 901).

Defendants both contend that Plaintiffs fail to establish

the existence of a constitutional violation with respect to the

search and seizure at Plaintiffs' home and, even assuming that

Plaintiffs could establish that such a violation occurred, that

they acted in an objectively reasonable manner in conducting the

search and seizure.[9]  Plaintiffs contend that Defendants cannot

assert the defense of qualified immunity because the evidence

obtained through the search was suppressed as unconstitutionally

seized.

A finding that a search is unconstitutional, however, does

not necessarily indicate that an officer is barred from claiming

_____

[9] Neither Defendant contends in his motion that any of the
rights that Plaintiff alleges were violated were not clearly
established.  Rather, the opinion of the Sixth Circuit in
Freeman, and the authority upon which that opinion was based,
illustrates that the right to be free from an illegal search and
seizure is clearly established. Chambers, 395 F.3d at 569-70.

16

qualified immunity.  See, e.g., Beard, 402 F.3d at 603 (finding
search of students to be unconstitutional but that defendants
were nonetheless entitled to qualified immunity because the
constitutional rights were not clearly established).
Additionally, the Sixth Circuit's finding that the evidence
seized from Plaintiffs' property was properly suppressed in the
criminal case against Mr. Chambers does not collaterally estop
either Defendant from contending that he is entitled to qualified
immunity.[10]  The Sixth Circuit opinion in Chambers did not
address the question of whether the Plaintiffs have "offered
sufficient evidence to indicate that what [the Defendant
officers] allegedly did was objectively unreasonable in light of
[Plaintiffs'] clearly established constitutional rights." Beard,

---

[10] Although the principle of collateral estoppel generally
bars a party from re-litigating an issue that was litigated in a
prior case, under federal law, collateral estoppel "requires that
the precise issue in the later proceedings have been raised in
the prior proceeding, that the issue was actually litigated, and
that the determination was necessary to the outcome." Spilman v.
Harley, 656 F.2d 224, 228 (6th Cir. 1981)(citations omitted).
The Court finds those factors absent in the instant case and
therefore that collateral estoppel does not bar Defendant Freeman
from raising the defense of qualified immunity.  Moreover,
collateral estoppel generally does not apply to bar an individual
officer from contending that he or she is entitled to qualified
immunity in a civil case under § 1983 where evidence was
suppressed for constitutional reasons in a prior related criminal
case. See Turpin v. County of Rock, 262 F.3d 779, 782-83 (8th
Cir. 2001)(finding collateral estoppel could not be asserted
against individual officers in a civil § 1983 case where officers
were not parties nor in privity with the state and did not have a
full and fair opportunity to litigate issues in a prior criminal
action in which evidence was suppressed); Tierney v. Davidson,
133 F.3d 189, 195-96 (2nd Cir. 1998)(same).

402 F.3d at 602-03 (citations omitted).  Accordingly, the Court must analyze Defendants' conduct to determine whether they are entitled to qualified immunity.  Because the Defendants' arrived at the scene at different times and therefore engaged in distinct conduct, the Court will analyze whether they are entitled to qualified immunity separately.

### a. Conduct Exclusively Involving Officer Freeman

Officer Freeman first contends that Plaintiffs cannot maintain a claim against him that would establish a constitutional violation.  However, the Sixth Circuit in Chambers found that the search of Plaintiffs' home was unconstitutional and therefore that the evidence seized from Plaintiffs' property should be suppressed.  Chambers, 395 F.3d at 569.  Accordingly, the Court finds that Plaintiffs point to sufficient evidence in the record to create a genuine issue of material fact regarding whether Officer Freeman violated their constitutional rights by engaging in an illegal search.

Officer Freeman next contends, however, that his actions were objectively reasonable in light of all the circumstances of the search of Plaintiffs' property - in particular, prior surveillance which indicated the possibility of drug activity at Plaintiffs' residence, the tip he received about Plaintiffs' manufacturing methamphetamine on the day of the search, the actions of individuals at Plaintiffs' residence in response to

the presence of police officers, the verbal consent that Plaintiffs gave to search the premises, the consent forms that Plaintiffs signed giving consent to search, and his procuring a search warrant to search the property.

In determining whether an officer's actions were objectively reasonable, "individual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the plaintiff's constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendants' position would understand that what he did violated those rights." O'Brien v. City of Grand Rapids, 23 F.3d 990, 999 (6th Cir. 1994)(citing Anderson v. Creighton, 483 U.S. 635, 638-39 (1987)).   An officer will be immune "if officers of reasonable competence could disagree" regarding whether the conduct violated the plaintiff's rights. Pray v. City of Sandusky, Ohio, 49 F.3d 1154, 1158 (6th Cir. 1995)(citing Malley v. Briggs, 475 U.S. 335, 349 (1986)); O'Brien, 23 F.3d at 999.

The police may enter a house without a warrant when "probable cause plus exigent circumstances" exist.   See Kirk v. Louisiana, 536 U.S. 635, 638 (2002)(explaining that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home").   A reasonable belief that an individual within a residence is about to destroy evidence is an exigent circumstance. United States v.

19

Campbell, 261 F.3d 628, 632-33 (6th Cir. 2001) ("The law is well
settled that a warrantless entry will be upheld when the
circumstances then extant were such as to lead a person of
reasonable caution to conclude that such evidence would probably
be destroyed within the time necessary to obtain a search
warrant."); see also United States v. Douglas Pennington, 287
F.3d 739, 747 (8th Cir. 2002)(holding that officer's knowledge
that drugs had just left the house, that drugs had been found in
the residence during a search three months prior, and that the
house currently smelled of drugs "created exigent circumstances
justifying the officers' entry into the house to arrest [an
occupant] and to prevent the destruction of drug manufacturing
evidence while they obtained a search warrant"); United States v.
Marshall, 157 F.3d 477, 482 (7th Cir. 1998)(holding that the
warrantless entry into the suspect's home was justified because
the officers reasonably believed the occupant was aware of their
presence and preparing to destroy evidence).

In the context of a search without a warrant based upon
exigent circumstances, the fact that an officer may have
subjectively believed that exigent circumstances existed to
warrant a search is not relevant to the qualified immunity
analysis - rather, the standard is one of objective
reasonableness. O'Brien, 23 F.3d at 999. However, officers are
"entitled to qualified immunity [when] their decision was

*reasonable,* even if mistaken." <u>Pray</u>, 49 F.3d at 1158 (citing

<u>Castro v. United States</u>, 34 F.3d 106, 112 (2nd Cir. 1994)).

Qualified immunity therefore protects the officer's conduct if it

was "objectively reasonable for [an officer] to conclude, given

the information [he] had, that immediate action ... without first

obtaining a warrant was necessary – that is, that exigent

circumstances existed to excuse [his] failure to obtain a warrant

before entering [Plaintiffs'] residence." <u>Id.</u>

It is undisputed that, prior to Officer Freeman traveling to

the Plaintiffs' home on the date of the search, Officer Freeman

had engaged in surveillance that indicated the possibility of

drug activity taking place at Plaintiffs' residence. (Pls.' Mem.

in Opp. to Def. Al Freeman's Mot. for Summ. J. at 4.)  Officer

Freeman contends, however, that he did not believe that he had

adequate probable cause when he went to Plaintiffs' residence on

October 9, 2002, to obtain a search warrant for the premises.

The Court finds that his belief that insufficient evidence

existed to obtain a search warrant, although possibly mistaken,

was reasonable.

Moreover, the general procedure of engaging a suspect in a

"knock and talk" is not unreasonable and has been upheld as an

appropriate police tactic.  <u>See Ewolski v. City of Brunswick</u>, 287

F.3d 492, 504 (6th Cir. 2002)(concluding that it was reasonable

to approach a suspect's home to attempt to learn more through

21

consensual questioning); see also United States v. Jones, 239
F.3d 716, 720 (5th Cir. 2001) ("Federal courts have recognized
the 'knock and talk' strategy as a reasonable investigative tool
when officers seek to gain an occupant's consent to search or
when officers reasonably suspect criminal activity.").
Accordingly, the Court finds that it was objectively reasonable
for Officer Freeman to attempt the "knock and talk" at
Plaintiffs' residence.

    Plaintiffs do not dispute that, when Officer Freeman arrived
at Plaintiffs' home, a female came to the door, looked at the
officers, and then excitedly ran back into the trailer home out
of sight while loudly shouting that the police were at the door.
It is likewise undisputed that Officer Freeman then heard
footsteps loud enough to indicate that several people were
running inside the trailer home; only then did Officer Freeman
enter the home.

    Considering all the circumstances and in light of
Plaintiffs' clearly established constitutional rights, the Court
finds that Officer Freeman's warrantless entry into Plaintiffs'
home was not objectively unreasonable.  Given what Officer
Freeman knew prior to arriving at the premises - that previous
surveillance had indicated the possibility of drug activity
taking place on the premises and a contemporaneous tip that
indicated drug activity was occurring on the date of the search -

22

combined with the circumstances he encountered when he announced
his presence, it was objectively reasonable for Officer Freeman
to believe that he had sufficient probable cause to enter the
home.   In addition, the Court finds that it was objectively
reasonable for Officer Freeman to believe that evidence or
contraband may have been in jeopardy of being destroyed or that
he or other officers may have been in danger, and therefore that
exigent circumstances also existed so as to justify a warrantless
entry into the home.   Even if Officer Freeman may have been
incorrect regarding whether sufficient probable cause plus
exigent circumstances existed to justify the entry, the Court
finds that such a belief was objectively reasonable under the
totality of the circumstances.

### b. Conduct Involving Officers Feathers and Freeman

With respect to the conduct that occurred subsequent to the
entry into Plaintiffs' home, Plaintiffs' allegations pertain to
the conduct of both Officer Freeman and Officer Feathers.
Accordingly, the Court will analyze whether qualified immunity
should apply as to both Defendants regarding the post-entry
conduct.

It is undisputed that, after securing the area, the officers
obtained oral consent to search the home from Plaintiffs, that
both Plaintiffs signed consent to search forms, and that after a
brief initial search a search warrant was obtained and a full

search conducted.  In light of the knowledge that Officer Freeman possessed prior to arriving at Plaintiffs' residence, the oral and then written consent to search obtained by the officers, and the procurement of a search warrant, the Court finds that the actions of Officer Freeman and Officer Feathers subsequent to the entry into Plaintiffs' home were also objectively reasonable.

Because the Court has found that the actions of Officer Freeman and Officer Feathers were objectively reasonable, both officers are entitled to qualified immunity from Plaintiffs' claims.  Accordingly, the motions for summary judgment of Officers Freeman and Feathers on the basis of qualified immunity are GRANTED.

### 2. Loss, Damage and/or Storage of Plaintiffs' Seized Property

Plaintiffs contend that their claims extend beyond the original search and seizure, and that Defendants are liable for alleged loss and/or damage to their property that occurred either during or subsequent to the search and seizure.  In particular, Plaintiffs contend that Defendants owed them a duty to properly store their confiscated property, the breach of which resulted in damage to or loss of their property.  {Pls.' Compl.} The Court construes this allegation as one under § 1983 pursuant to the Fourteenth Amendment for deprivation of property without due process of law.

Both Defendants contend that Plaintiffs' claims regarding any loss or damage to their property during or subsequent to the seizure should be dismissed because Plaintiffs fail to point to any evidence that either Defendant was responsible for the confiscation, storage, or maintenance of Plaintiffs' property or that either Defendant caused any damage to or loss of Plaintiffs' property.  Having reviewed the record and the parties' submissions, the Court finds that Plaintiffs fail to point to any evidence in the record to show that either Defendant had any role in the storage or maintenance of Plaintiffs' property or caused any damage to or loss of Plaintiffs' property.  Rather, the deposition testimony of Mr. Chambers indicates that he is not aware of any actions that either Defendant took with respect to his property.  When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998).  Plaintiffs have failed to do so.  Accordingly, the Court finds that, even if Defendants were not entitled to qualified immunity from Plaintiffs' claims, Plaintiffs have failed to point to evidence in the record to create a genuine issue of material fact regarding whether either Defendant was responsible for any damage or loss to their property - and therefore that either Defendant was responsible

for the deprivation of any constitutional or federal statutory right pursuant to § 1983. <u>See</u> <u>Parratt</u>, 451 U.S. at 535; <u>Block</u>, 156 F.3d at 677.  Moreover, even if Plaintiffs had pointed to evidence that Defendants were involved in the storage or maintenance of Plaintiffs' property, Plaintiffs point to no evidence in the record or legal authority to show that such conduct rises to the level of a constitutional violation.

Additionally, both Officers contend that Plaintiffs are barred from asserting a § 1983 claim pursuant to the Fourteenth Amendment because a post-deprivation remedy was available to them through state law.

> [A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

<u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984).  Plaintiffs have not alleged that a postdeprivation remedy for their alleged loss was not available.  Rather, the record shows that such a remedy was available through the Tennessee Department of Safety and that Plaintiffs took advantage of it, settling their claims through that process.  Accordingly, no genuine issues of material fact exist and Defendants are entitled to judgment as a matter of law regarding Plaintiffs' § 1983 claims alleging loss or damage to

their property during or subsequent to the seizure.[11]
Plaintiffs' § 1983 claims against both officers are therefore
DISMISSED.[12]

### D. State Law Claims

Plaintiffs' Complaint also asserts unspecified claims
pursuant to the laws and Constitution of the State of Tennessee.
Having granted Defendants' motions for summary judgment and
dismissed Plaintiffs' federal claims, the Court exercises its
discretion to decline to assert supplemental jurisdiction over
Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(3).
Accordingly, Plaintiffs' state law claims against Defendants are
hereby DISMISSED.

## IV.   CONCLUSION

For the foregoing reasons, the motions for summary judgment
of Defendants Freeman and Feathers are GRANTED and all of
Plaintiffs' claims are DISMISSED.

---

[11] Accordingly, the Court need not address Defendant
Freeman's contention that Plaintiffs are barred from suing
Defendant Freeman due to the release signed by Leslie Chambers.

[12] In their Complaint, Plaintiffs also assert that
Defendants violated their rights pursuant to the Eighth
Amendment.  In their response to Defendants motions for summary
judgment, however, Plaintiffs do not articulate any theory upon
which either Defendant violated any of their rights pursuant to
the Eighth Amendment.  Nonetheless, Defendants would be entitled
to qualified immunity from any such claim based upon the facts
alleged by Plaintiffs.

So ORDERED this __12__ day of August, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 57 in case 2:03-CV-02754 was distributed by fax, mail, or direct printing on August 15, 2005 to the parties listed.

---

James I. Pentecost
PENTECOST GLENN & RUDD, PLLC
106 Stonebridge Blvd.
Jackson, TN 38305

Edward J. McKenney
HARRIS SHELTON HANOVER WALSH, PLLC.
One Commerce Square
Ste. 2700
Memphis, TN 38103--255

William B. Mauldin
PENTECOST GLENN & RUDD, PLLC
106 Stonebridge Blvd.
Jackson, TN 38305

James T. Allison
LAW OFFICE OF JAMES T. ALLISON
100 North Main Bldg.
Ste. 2309
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT